UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| BOBBY R. SNEED, SR. | CIVIL ACTION NO. 06-383-P |
| VERSUS | JUDGE WALTER |
| VENETIA MICHAELS, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the Court is a civil rights complaints filed in forma pauperis by pro se plaintiff Bobby R. Sneed, Sr. ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this Court on March 3, 2006.[1] Plaintiff is currently incarcerated at the Forcht Wade Correctional Center, but complains his civil rights were violated while incarcerated at the David Wade Correctional Center in Homer, Louisiana. He names Venetia Michaels, Richard Stalder, Sgt. Lonnie Hay, Jerry Goodwin, Angie Huff, LSU Medical Center, David Wade Correctional Center medical department, Dr. Singson, Master Sgt. Hoof, Master Sgt. West, Nurse Betty Enis, Sue Odom, Earl Benson, Lt. Williams, Sgt.

---

[1]The Court will not address any claims raised by Plaintiff that occurred after this complaint was filed on March 3, 2006. If Plaintiff wishes to pursue these claims, he should file them in a new and separate complaint. These claims would be barred for failure to exhaust prior to filing this complaint.

Lyles, Sgt. Green, Sgt. Greer, Nurse Martin, Sgt. Emerson, Cpt. Robinson, Lt. Solomon, Cpt. Turner, Lt. Col. Hollenhead, K. Major, and E.A. Conway medical staff as defendants.

Plaintiff alleges a wide array of complaints. He claims he suffered a stroke which caused partial loss of function of his right arm, impaired vision, slurred speech, headaches, impaired brain function, leg weakness, short term memory loss, severe stress and mental anguish because the prison medial staff deliberately refused to treat his obvious stroke symptoms with emergency medical treatment. He claims that on March 3, 2005, he made an emergency sick call because he was experiencing blurred vision, dizziness, and a headache on his left side. He claims Master Sgt. Hoof refused to allow him an emergency sick call and made him wait with the inmates making routine sick calls. He claims this refusal significantly eroded the time for administering clot busting drugs which would have limited the effects of the stroke. He claims the nurse checked his vitals and found them to be normal. He claims that approximately one hour and 20 minutes later, he was examined by Dr. Singson. He complains that Dr. Singson gave him no medical treatment and instructed him to return to his dorm. Plaintiff admits, however, that Dr. Singson placed him on five days of observation and scheduled him for a call out on March 8, 2005. He claims he returned to his dorm and laid in his bed because he was too sick to work.

Plaintiff claims that while at lunch his health deteriorated and he dropped his food tray on the floor. He claims he does not remember returning to his dorm. He claims his son later took him to the infirmary. He claims he was unable to see so his son made an

emergency sick call and advised the staff that his father was having a stroke. He claims Nurse Sue Odom attended to him and immediately took him to an examination room. He claims she ordered that he be transferred to the hospital. He claims Dr. Singson was present but did not examine or treat him. He claims he was placed in a wheelchair and transported to the north security office where he was placed in restraints. He claims he was then transported to the north visitation facility and left there unattended to wait for the prison transport van to return from another hospital trip. He claims he waited approximately 45 minutes for the transport van.

Plaintiff claims that when the prison transport van returned, the security officers took it to be refueled and checked before taking him to the hospital. He complains that he was not transported to the hospital by ambulance. He further complains that he was not given clot busting medication. He claims the trip to the hospital took approximately one and a half hours. He claims that during the trip, Master Sgt. West and Sgt. Hay ignored his repeated requests for help and did not take him to the hospital located in Homer, Louisiana.

Plaintiff claims that after arriving at E.A. Conway Hospital, he had to wait with other inmates approximately 45 minutes before he was seen. He claims he was examined by several medical students. He claims that after he was finally examined by a resident doctor, he was admitted to the hospital. He claims he was not treated for his condition until he was in a hospital bed. He claims more than ten hours passed between his first emergency sick

call and when he received treatment. He claims that several days later he was transported to LSU Medical Center for further testing and evaluation.

Plaintiff claims that on March 15, 2005, he was transported to the prison infirmary. He claims that after half a day in the infirmary, he was discharged to his dorm. He complains that no special provisions were made to accommodate his condition. Plaintiff admits however, that he was issued a duty status effective April 1, 2005 to October 1, 2005, which limited his duties to the scope of his capabilities and allowed him use of a wheelchair.

Plaintiff claims that on April 11, 2005, he was transported to LSU Medical Center and the doctor prescribed medication for him. He complains that he was not given the prescribed medication. He claims that when he was transported to LSU Medical Center, he got wet and had to remain wet the entire day. He complains that when he returned to the prison, he had problems getting his medication. He claims that on April 20, 2005, he saw Dr. Hearn and she ordered speech therapy for him. He claims that on April 25, 2005, he was transported to E.A. Conway Hospital.

Plaintiff claims that on May 16, 2005, Sgt. Greer questioned him because his brother was pushing his wheelchair. He claims Sgt. Greer asked him why he needed his brother to push him when he had just coached a basketball game.

Plaintiff claims that on May 17, 2005, Sgt. Green and Sgt. Lyles questioned him because his brother was pushing him in his wheelchair. He claims that after being questioned for a long period of time, he became ill and had to make an emergency sick call.

He claims he was treated by Pam Austin who informed Lt. Williams of his condition. He claims he also made a mental health request.

Plaintiff claims that on May 20, 2005, Lt. Benson would not allow him to receive his legal mail. He complains he had to wait until the night shift gave him his legal mail.

Plaintiff claims that on June 4, 2005, he was seen by Dr. Hearn. He claims Dr. Hearn told him that she was going to check on locating a speech therapist for him. He claims he requested an ankle "bracklet" and still has not received one. He claims that on June 17, 2005, he was transported to LSU Medical Center and saw a doctor and a speech therapist. He claims that on June 18, 2005, he was transported to Forcht Wade Correctional Center for a dental appointment.

Plaintiff claims that on August 6, 2005, he awoke choking and unable to breathe. He claims his brother and son carried him to the infirmary for treatment. He claims he was unable to speak. He claims the nurse pressed on his chest and caused him great pain. He claims the nurse checked his vital signs. He claims she then pulled his file and called Dr. Hearn. He claims he was given liquid Tylenol and ordered to return to his dorm.

Plaintiff claims that on August 31, 2005, he was denied therapy by Ms. Ward and Nurse Mary. Plaintiff claims that on November 25, 2005, Nurse Odom discontinued his hand therapy. He claims that during the holiday season, no nurses were on duty and Sgt. Pugh dispensed the medication.

Plaintiff claims he has received no rehabilitative therapy for his condition and he is still ill. He claims he has only seen a speech therapist and a brain surgeon once. He further claims he has not received the speech therapy prescribed for him by the medical staff at E.A. Conway Hospital. He does admit that the prison staff is attempting to make arrangements with a speech therapist at Louisiana Tech University because E.A. Conway and LSU Medical Center does not provide speech therapy.

Plaintiff claims that on October 31, 2006, he was issued a rule violation report for theft. On November 8, 2005, he was convicted and sentenced to 24 weeks loss of incentive wages and six weeks loss of yard and recreation.

Plaintiff claims that on November 6, 2005, he was issued a rule violation report for malingering by Nurse Martin. He claims Lt. Solomon signed the rule violation report even though he knew that Lt. Hickman had suggested that he make the sick call. On November 8, 2005, he was convicted and sentenced to 24 weeks loss of incentive wages and $8.00 restitution. On December 8, 2008, the Warden affirmed the conviction and sanction but expunged the restitution portion of his sentence.

Plaintiff complains that Lt. Col. Hollenhead and K. Major imposed disciplinary sanctions which interfered with his recovery.

Plaintiff claims Captain Robinson placed him on lock down because an envelope was found in his cell block with his name on it. He claims Captain Robinson released him when he discovered he could not write.

As relief, Plaintiff seeks a declaratory judgment, injunctive relief, expungement of a disciplinary conviction, compensatory and punitive damages, and any other relief to which he is entitled.

For the following reasons, Plaintiff's civil rights should be dismissed.

## LAW AND ANALYSIS

**Medical Care Claims**

Plaintiff filed these claims pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a

culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). Finally, a prisoner must also allege an injury that is more than de minimis, although it need not be significant. See Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). See also Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997).

The record does not contain facts which sufficiently show that the named Defendants have been deliberately indifferent to any serious medical needs. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). Furthermore, disagreement with methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton, 122 F.3d at 292.

As shown below, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff.

**March 3, 2005 Emergency Sick Call** – Plaintiff admits that he was examined by the nurse and she checked his vital signs which were found to be normal. He further admits that he was examined by Dr. Singson and that Dr. Singson placed him on observation for five days and scheduled him for call out on March 8, 2005.

**Condition Deteriorated at Lunch** – Plaintiff admits Nurse Sue Odom attended to him and immediately took him into an examination room. He admits that she ordered that he be transported to E.A. Conway Hospital.

**Prison Transport Van to E.A. Conway** – Nurse Sue Odom made the decision to have Plaintiff transported to E. A. Conway Hospital by the prison transport van. Disagreement with the methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

**Forty-five Minute Wait at Hospital** – Plaintiff does not allege any harm was caused by the 45 minute wait with the other prisoners. He admits that he was examined by medical students and a resident doctor, then admitted to the hospital and treated.

**Lack of Special Accommodations Following Discharge From Infirmary** – Plaintiff admits he was issued a duty status which was effective April 1, 2005 to October 1, 2005 which limited his duties to the scope of his capabilities and allowed him use of a wheelchair. Furthermore, he does not allege which special provisions were needed to

accommodate his condition or that he suffered any harm because he was not granted these provisions.

**Difficulty Getting Medication after LSU** – Plaintiff has failed to demonstrate that Defendants acted with deliberate indifference to his serious medical needs when they failed to give him his medication immediately upon returning to the prison or even for a few days.

**Becoming Ill After Questioning re Wheelchair** – Plaintiff admits that he was treated by Pam Austin.

**Failure to Receive Ankle "Bracklet"** – Disagreement with the methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

**Chocking/Unable to Breathe** – Plaintiff admits that the nurse attempted to render aid, checked his vitals and called Dr. Hearn. He further admits that she gave him liquid Tylenol.

**Denial of Therapy** – Disagreement with the methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

**No Nurses on Duty During Holiday** – Plaintiff admits that he received his medication during this time.

**No Rehabilitative Therapy** – Plaintiff admits that he was seen by a speech therapist and brain surgeon at least once. He further admits that the prison staff attempted to locate a speech therapist for him.

Again, the facts alleged by Plaintiff show that Defendants were attentive to Plaintiff's medical needs. Plaintiff clearly disagrees with many aspects of his treatment, but disagreement with the methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right. The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992). Accordingly, these claims regarding the denial of medical care and inadequate medical care should be dismissed with prejudice as frivolous.

**Mail Claim**

Plaintiff claims that on May 20, 2005, Lt. Benson would not allow him to receive his legal mail and he had to wait until the night shift to receive it. At the most, Plaintiff has alleged the mailroom delayed the delivery of his mail by a few hours. Delay in distributing prisoner mail without a showing of harm does not support an actionable civil rights claim. Richardson v. McDonnell, 841 F.2d 120 (5th Cir. 1988). Plaintiff has failed to allege any actionable harm caused by the delay in receiving his mail. Accordingly, Plaintiff's mail claims should be dismissed with prejudice as frivolous.

**Due Process Claims**

Plaintiff claims his November 8, 2005 disciplinary sentences interfered with his recovery. He was sentenced to 24 weeks loss of incentive wages and six weeks loss of yard and recreation. Plaintiff also claims that after another incident he was placed in lock-down, but later released after the matter was investigated. To the extent Plaintiff contends he was punished without due process, these claims are not cognizable.

In <u>Sandin v. Connor</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. <u>Id</u>. 132 L.Ed.2d at 431. Under the guidance provided by <u>Sandin</u>, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. <u>Orellana v. Kyle</u>, 65 F.3d 29, 31-32 (5th Cir. 1995). Moreover, in commenting on <u>Sandin</u>, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect

the quantity of time rather than the quality of time served by a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff in the instant case does not allege that the disciplinary action affected the duration of his sentence or that the disciplinary sentence was atypical of the prison environment. To the contrary, Plaintiff's allegations concern the loss of incentive wages and yard and recreation and placement in lock down which are far from "extraordinary." This Court finds that under Sandin, Orellana and Madison, the loss of incentive wages and yard and recreation and placement in lock down do not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns. Accordingly, Plaintiff's claims that he was punished without due process of law are without merit and should be dismissed with prejudice as frivolous.

**Expungement Claim**

Plaintiff seeks expungement of a disciplinary conviction. Plaintiff does not give details about which disciplinary conviction he seeks to have expunged. This claim is barred by Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994). According to Heck, an inmate may not attack a prison disciplinary conviction[2] in a civil rights action until he demonstrates that the disciplinary conviction has been invalidated, reversed, expunged or otherwise declared invalid through a collateral proceeding or a writ of habeas corpus. Id.

---

[2] In Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997), the Supreme Court approved the application of the Heck doctrine to prison disciplinary proceedings.

Plaintiff's disciplinary conviction has not been invalidated, reversed, expunged, or declared invalid as that is what he is asking this Court to do. Accordingly, Plaintiff's claim that his disciplinary conviction should be expunged should be dismissed with prejudice as frivolous under 28 U.S.C. § 1915(e) until such time as the Heck conditions are met.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims regarding medical care, legal mail and due process should be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) and his expungement claim should be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) until such time as the Heck conditions are met.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)© and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 21st day of January, 2009.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE